FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ MAR 29 2010 ★

BROOKLYN OFFICE

ORIGINAL

D&F
C|M

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---------------------------------------------------------x

MARIN CANALES,

          Plaintiff,

    -against-

COMMISSIONER OF SOCIAL SECURITY,

          Defendant.

---------------------------------------------------------x

**MEMORANDUM AND ORDER**
Case No. 08-CV-5019 (FB) (SMG)

*Appearances:*
*For the Plaintiff:*
RICHARD P. MORRIS, ESQ.
Klein, Wagner & Morris
277 Broadway, 9th Floor
New York, New York 10007

*On the Brief:*
CHRISTOPHER J. BOWES, ESQ.

*For the Defendant:*
BENTON J. CAMPBELL, ESQ.
United States Attorney
Eastern District of New York
BY:   JOHN VAGELATOS, ESQ.
Assistant United States Attorney
271 Cadman Plaza East
Brooklyn, New York 11201

*On the Brief:*
STEPHEN P. CONTE, ESQ.
KARLA J. GWINN, ESQ.

**BLOCK, Senior District Judge:**

Plaintiff Marin Canales ("Canales") seeks judicial review of the final

determination of the Commissioner of Social Security ("the Commissioner") denying his

applications for Social Security Disability and Supplemental Security Income benefits

(collectively, "DIB"). Both parties move for judgment on the pleadings. For the following

reasons, the Commissioner's determination is vacated and the matter is remanded for

further proceedings.

# I

From 2000 until 2005, Canales worked in construction. He was struck by an automobile while crossing a street on March 9, 2005; he has not worked since. He claims that he is disabled due to back pain and depression. Canales filed for DIB on December 13, 2005; his date last insured was December 31, 2006. After a hearing before an administrative law judge ("ALJ"), Canales's application was denied. *See generally* AR[1] at 256-293 (transcript of hearing before ALJ held November 13, 2007); AR at 16-28 (ALJ decision issued August 1, 2008). The ALJ concluded that Canales had no severe mental impairments, and one severe physical impairment, lumbar disc disease. The parties agree that the ALJ's evaluation of Canales's physical limitations was correct insofar as he was limited to sedentary work. *See* Canales Mem. of Law at 1; Comm'r Mem. of Law at 20. Since Canales could only do sedentary work, the ALJ concluded he could not return to his past work in construction; however, after evaluating Canales's limitations under the Commissioner's Medical-Vocational Guidelines ("the Grids"), she concluded that he was still able to perform other jobs, and was therefore not entitled to DIB. The Appeals Council declined review.

Canales's principal contention is that the ALJ erroneously concluded that he had no severe mental impairments; he demands remand for the calculation of benefits, or, at a minimum, a new hearing. The Court concludes a new hearing is warranted because: (1) new evidence from treating psychiatrist Dr. Miriam Ewaskio ("Dr. Ewaskio") supports Canales's claims of mental impairments; (2) the ALJ failed to apply the treating physician

---

[1] "AR" refers to the transcript of the administrative proceedings. *See* Docket Entry No. 13.

rule properly to the findings of Dr. Maria Diaz ("Dr. Diaz"), Canales's primary care physician; and (3) the ALJ failed to apply the Commissioner's regulations properly to the findings of Elizabeth Rodriguez ("Rodriguez"), a licensed social worker.

## A.  *Evidence of Canales's Mental Limitations*

Canales's medical records reflect that he was referred for psychiatric consultation by Dr. Diaz in the spring of 2007. A note dated April 11 from social worker Angela Flores ("Flores") at Montefiore Medical Center stated that Canales was "guarded" and "appeared [to be] under alcohol [and] substance influence."[2] Because she was "unable to communicate" with Canales, Flores called Dr. Diaz, who was able to "calm him down"; they rescheduled his psychiatric consultation for the following day. Flores concluded that the session "was tense and inconclusive." AR at 241. Flores noted on April 12 that Canales failed to appear for his scheduled appointment; she noted in his file that she referred him to a detoxification program at St. Barnabas Hospital. *Id.* Flores did not see Canales again until May 9, 2007; on that date she referred him, at his request, to a psychiatrist at Montefiore Medical Center, noting that he was "very aggressive" and "appeared to be intoxicated." AR at 240. On June 29, Flores saw Canales a third time. She referred him to a psychiatric clinic at Bronx-Lebanon Hospital, noting his "alcohol abuse history" and "[v]ery aggressive personality." *Id.*

---

[2] For purposes of completeness, the Court notes that "Angela Flores" is an approximation of the name signed below the chart entries to which the Court refers; there is no dispute that the same social worker made them, nor do the parties dispute the substance of the entries. *See* Canales Mem. of Law at 8 (paraphrasing these entries); Comm'r Mem. of Law at 13 (same).

On August 15, 2007, Canales was seen by Elizabeth Rodriguez ("Rodriguez"), a licensed clinical social worker at a psychiatric clinic at Bronx-Lebanon Hospital. Rodriguez noted that Canales's chief complaint was "depression," and that Canales "was neat in appearance and well groomed," and had a "logical" thought process. Rodriguez further noted that Canales's mood was "depressed and affect appropriate," and that he admitted "to suicidal ideation however denies any plan or intent . . . [or] hallucinations." AR at 180-82.

Rodriguez completed a "Psycho-Social History" on the same date; she noted that Canales had "symptoms of PTSD-depression,"[3] and noted the presence of the following symptoms: (1) aggressive behavior; (2) depressed mood; (3) emotional/physical/sexual trauma victim; (4) crying spells; (5) hopelessness; (6) irritability; (7) sleep disorder; (8) paranoia; (9) substance use (in remission); and (10) poor memory. AR at 192. She noted "functional deficit areas" of "coping skills" and "management of medical problems." Id. Canales again reported suicidal ideation; he also told Rodriguez that he was raped when he was a child. AR at 193. He denied using any alcohol or other substances for 12 months, and reported a "mild" impact of alcohol and drugs on his life. AR at 194.

Rodriguez completed a "Medical Assessment of Ability To Do Work-Related Activities (Mental)" on the same date. With respect to Canales's ability to "mak[e] occupational adjustments," Rodriguez rated his abilities as "poor to none" — the lowest rating — with respect to six of eight categories, and "fair" — the second-lowest rating — with

_____

[3] "PTSD" stands for post-traumatic stress disorder.

respect to the remaining two categories. AR at 148. In her assessment of Canales's abilities to "mak[e] performance adjustments," Rodriguez gave a "poor to none" rating in all three categories. AR at 149. In her assessment of Canales's abilities to "mak[e] personal-social adjustments," Rodriguez rated Canales as "good" with respect to maintaining personal appearance and reliability; "fair" with respect to behaving in an "emotionally stable manner"; and "poor to none" with respect to relating "predictably" in social situations. *Id.*

On September 6, 2007, Canales was seen by Dr. Upendra Bhatt ("Dr. Bhatt"), a psychiatrist with Bronx-Lebanon's Department of Psychiatry. Dr. Bhatt reported that Canales was "angry and irritable and cursing a lot," had "alcohol on his breath," and "expressed homicidal and suicidal idea[tion]." AR at 179. Dr. Bhatt transferred him to Bronx-Lebanon's psychiatric emergency room via ambulance. *Id.* The results of this hospitalization, if any, are not clear, though a subsequent note indicates Canales was referred to an alcohol program at Martin Luther King Health Center ("MLKHC"). AR at 175.

One week later, on September 13, Canales presented to the psychiatric clinic at Bronx-Lebanon with a "very strong smell of alcohol on his breath." AR at 175. Social worker Theresa Carey ("Carey") reminded him of his referral to MLKHC and explained to him that "he could get his alcohol [treatment] and psych [treatment] in the same place." AR at 175. Canales "became angry stating he did not want to go." *Id.* Carey informed personnel at MLKHC that Canales would be coming, but a note from Rodriguez the next day indicates that he never went. AR at 175. On September 18, 2007, Rodriguez noted in Canales's file that a nurse had visited him at his home; her note indicates that he denied

"any suicidal or homicidal ideation," and "did not smell of alcohol or appear intoxicated." AR at 174. He was reminded again of his referral to MLKHC for treatment. *Id.*

Later the same day, Canales appeared again at Bronx-Lebanon's psychiatric clinic; he was "intoxicated" and "had made threats to harm [him]self and his mother." AR at 174. Carey called emergency medical services, who took Canales to the emergency room at St. Barnabas Hospital. *Id.* Carey completed a "Psychiatric Hand-Off/Communication Form" that accompanied Canales to St. Barnabas, noting that Canales was "refusing substance abuse treatment," and that:

> [Canales] is in need of [substance abuse] treatment. He is actively drinking. [Canales] would benefit greatly from detox[ification] and rehab[ilitation] [treatment] and then possibly a half-way house . . . [Canales] does not have any insight into his [substance abuse] diagnosis.

AR at 195-96.

Canales was observed at St. Barnabas until late the next day, September 19; he was discharged after he reported that he "did not mean" the threats he had issued the day before and that he "would not hurt anybody." AR at 205-06. The "impression" of the supervising attending physician was "depression." AR at 205.

There are further notes from Dr. Diaz dated September 26; October 4, 11, 23; November 7 and 20, 2007. AR at 224-233. These notes are difficult to read; the ALJ's decision does not discuss them.

Dr. Diaz completed a report dated November 8, 2007, stating that she had treated Canales from April through November 2007, and that she had seen Canales approximately once every one to two weeks during this period. AR at 163. She diagnosed

6

him with major depressive disorder, with a "fair" prognosis. AR at 164-65. Dr. Diaz also

noted the presence of sleep disturbance, psychomotor agitation and/or retardation,

difficulty concentrating and/or thinking, and hallucination, delusions, and/or paranoid

thinking. AR at 167. Dr. Diaz opined that Canales had marked restriction of activities of

daily living, marked deficiencies of concentration, and repeated episodes of deterioration

or decompensation in work or work-like settings; she did not state the basis for these

conclusions. AR at 169. She also opined that Canales had marked difficulties in

maintaining social functioning, explaining that he would "becom[e] paranoid and would

be aggressive and combative." AR at 169.

## B.     The ALJ's Decision

With regard to Canales's mental status, the ALJ rejected the diagnosis of

PTSD made by Rodriguez in her report of August 15, 2007, and the diagnosis of depression

made by Dr. Diaz in her report of November 8, 2007:

> These diagnoses were no[t] made by a psychiatrist or a
> psychologist, but were made by a social worker . . . who [is not
> an] acceptable medical source[] to make a diagnosis, and by an
> internist, Dr. Maria Diaz, who has no expertise in psychiatry
> and made no mental status examination findings but was
> monitoring his medications.

AR at 19. With respect to Canales's episodes of alcohol use, the ALJ reasoned that, since

Canales had not medically established a mental impairment, there was no way to evaluate

the effect of his alcohol use on any mental impairments he might have; "[f]urthermore, the

alcoholism alone does not appear to occur so persistently as to be disabling." *Id.* The ALJ

therefore concluded that "no such medical diagnoses [of severe mental impairments] have been established." *Id.*

The ALJ went on to evaluate the evidence of Canales's mental impairments under the four broad functional areas set forth in the Commissioner's listing of impairments to determine if a severe mental impairment could be established notwithstanding the lack of an acceptable medical diagnosis. *See* 20 C.F.R., Pt. 404, Subpt. P, Appx. 1, § 12.00C (defining broad functional areas "activities of daily living," "social functioning," "concentration, persistence or pace," and "episodes of decompensation"). The ALJ concluded that Canales had mild limitations in daily living, social functioning, and concentration. The ALJ found no episodes of decompensation, dismissing Canales's emergency room admission of September 18-19, 2007, as "due to alcohol intoxication, not depression[.]" AR at 19. The ALJ therefore concluded that Canales's mental impairments were "non-severe." AR at 20.

Next, the ALJ reviewed the evidence to determine the limitations Canales faced due to his non-severe mental impairments. She noted that Canales testified that he took medication for his depression; "[h]e said that he hears voices and feels that he is crazy and does not want to live." AR at 21. Canales testified, however, that he does not "hear voices" while on his medication. *Id.*

With respect to Dr. Diaz's report, the ALJ declined to give "significant weight" to the report's findings on Canales's mental limitations:

> [Dr. Diaz] checked off symptoms of generalized anxiety
> disorder and affective disorder. Dr. Diaz opined that [Canales]
> has marked restrictions of daily living and concentration,

8

persistence or pace but did not explain how she arrived at those conclusions. She opined that [Canales] has marked difficulties maintaining social functioning because he becomes paranoid and would be aggressive and combative. She also opined that the claimant has episodes of deterioration but failed to provide any specifics.

Dr. Diaz's findings and opinions are conclusory and unsupported by the evidence of record. Further they are inconsistent with the treatment notes that mainly show [Canales's] alcoholism and no mental status examination by a psychiatrist or psychologist . . . or even by Dr. Diaz. Therefore, I do not give Dr. Diaz'[s] findings and opinions significant weight.

AR at 25. With respect to Rodriguez's report, the ALJ declined to give "significant weight" to the mental limitations noted by Rodriguez because she was a social worker. AR at 23. The ALJ also noted several of Canales's medical records from September 2007 that reflected episodes of intoxication. AR at 25-26. Although the ALJ did not say so explicitly, it is clear that she concluded that Canales did not suffer from any meaningful mental limitations.

Since Canales retained a sedentary residual functional capacity, the ALJ concluded that the Grids directed a finding that he was not disabled. Accordingly, the ALJ denied Canales's application for DIB. AR at 28.

C.    *Proceedings Before the Appeals Council*

Canales sought review from the Appeals Council, and submitted additional medical records. *See* AR at 248. Chief among these are records from Dr. Ewaskio, including a handwritten note of October 16, 2008: "I've evaluated and treated Mr. Marin Canales as his psychiatrist. He suffers from Major Depression with psychotic features as well as Chronic Pain Syndrome. He is currently unable to work in any gainful way." AR

at 249. Dr. Ewaskio also completed a consultation report of the same date, noting "MDD with psychotic features; treated/stable on current meds." *Id.* at 250.[4] Dr. Ewaskio also issued prescriptions for Desyrel, Seroquel, Flexeril, and Cymbalta.[5] *Id.* at 251-52.

In a brief letter, the Appeals Council stated, without discussion, that it had "considered . . . the additional evidence" submitted by Canales and that it "found that this information does not provide a basis for changing the [ALJ]'s decision." AR at 5-6.

The denial of review by the Appeals Council rendered the ALJ's decision the Commissioner's final decision. Canales timely requested judicial review.

## II

In reviewing the Commissioner's decision, "a district court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision." *Butts v. Barnhart*, 388 F.3d 377, 384 (2d Cir. 2004). Substantial evidence is "more than a mere scintilla," and should be that which "a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotations marks and citation omitted).

---

[4] Based on the record, the Court infers that "MDD" stands for "Major Depression Disorder." *See, e.g.*, Canales Mem. of Law at 13; Comm'r Mem. of Law at 15.

[5] Desyrel, a brand name for trazodone hydrochloride, "is indicated for the treatment of depression." *Doherty v. Astrue*, No. 07-CV-954, 2009 WL 1605360, at *3 n.10 (N.D.N.Y. June 5, 2009) (citing http://www.rxlist.com). Seroquel is a "preparation of quetiapine fumarate that is indicated for the treatment of depressive episodes associated with bipolar disorder." *Id.* at *4 n.10 (citing same). Flexeril is a "preparation of cyclobenzaprine used to treat muscle spasms and acute, painful musculoskeletal conditions." *Mushtare v. Astrue*, No. 06-CV-1055, 2009 WL 2496453, at *6 n.7 (N.D.N.Y. Aug. 12, 2009) (citing http://www.rxlist.com). Cymbalta is a "preparation of duloxetine hydrochloride, indicated for the acute and maintenance treatment of major depressive disorder and for the management of fibromyalgia." *Id.* at *6 n.19 (citing same).

The five-step procedure used by the Commissioner for evaluating claims to DIB is well-known. *See Balsamo v. Chater*, 142 F.3d 75, 79 (2d Cir. 1998) (setting out five-step procedure); 20 C.F.R. § 404.1520 (same). First, the Commissioner determines whether the claimant is currently engaged in substantial gainful activity. Second, the Commissioner considers whether the claimant has a "severe impairment" that significantly limits his physical or mental ability to do basic work activities. Third, if the claimant does have a severe impairment, the Commissioner considers whether that impairment is listed by the Commissioner as dictating a finding of disability, or is equal to a listed impairment. Fourth, if the claimant's impairment is not listed, the Commissioner determines whether the claimant retains the RFC to perform his past relevant work. If not, the burden is on the Commissioner at the fifth and last step to show that "there is other work which the claimant could perform." *Balsamo*, 142 F.3d at 79-80.

The Court's conclusion that a new hearing is warranted is supported by the facts and law set forth below.

## A.    *Dr. Ewaskio's Findings*

The Appeals Council's refusal to review the ALJ's decision was not a decision on the merits of Dr. Ewaskio's findings. "The Appeals Council's denial of a request for review is analagous to a denial of certiorari, and it is notable that the Supreme Court has previously found that 'the denial of certiorari . . . imports no expression of opinion upon the merits of a case.'" *Pollard v. Halter*, 377 F.3d 183, 192 (2d Cir. 2004) (citing *House v. Mayo*, 324 U.S. 42, 48 (1945)).

Rather, the inquiry is whether Dr. Ewaskio's findings constitute "new evidence" that requires remand. The Commissioner's regulations specify that "if new and material evidence is submitted," the Appeals Council "shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision." 20 C.F.R. § 404.970(b); *see also* 42 U.S.C. § 405(g) ("The court . . . may at any time order additional evidence to be taken before the Commissioner . . . but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding."). Because Dr. Ewaskio's findings "did not exist at the time of the ALJ's hearing," there is no question that the evidence is "new" and that "good cause" existed for the failure to submit it to the ALJ. *Pollard*, 377 F.3d at 193. "The only issue, then, is whether the evidence is 'material.' New evidence is 'material' if it is both (1) relevant to the claimant's condition during the time period for which benefits were denied and (2) probative." *Id.* (internal marks omitted) (citing *Tirado v. Bowen*, 842 F.2d 595, 597 (2d Cir. 1988)).

Dr. Ewaskio's findings were the findings of a treating psychiatrist. Since the ALJ based her rejection of the diagnoses of Dr. Diaz and Rodriguez primarily on the basis that they were not psychiatrists, a determination by a psychiatrist that accorded with those diagnoses is clearly probative. It is also relevant to the time period for which benefits were denied because, as the Second Circuit has repeatedly observed:

> evidence bearing upon an applicant's condition subsequent to the date upon which the earning requirement was last met is pertinent evidence in that it may disclose the severity and continuity of impairments existing before the earning requirement date or may identify additional impairments

> which could reasonably be presumed to have been present and
> to have imposed limitations as of the earning requirement date.

*Lisa v. Sec'y of Dep't of Health & Human Servs.*, 940 F.2d 40, 44 (2d Cir. 1991) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463 F.2d 38, 41-42 (2d Cir. 1972)); *see also Jones v. Barnhart*, No. 00-CV-9584, 2002 WL 655204, at *7-*8 (S.D.N.Y. Apr. 22, 2002) (remanding where new evidence submitted to Appeals Council consisted of evaluation by psychiatrist that claimant had "major depression" and was "not able to work").

Accordingly, the case must be remanded for a new hearing to permit consideration of Dr. Ewaskio's findings.

## B.    *Dr. Diaz's Findings*

Canales also contends that the ALJ failed to conform to the treating physician rule when she rejected the opinions of Dr. Diaz. "The opinion of a treating physician is given controlling weight if it is well supported by medical findings and not inconsistent with other substantial evidence." *Rosa v. Callahan*, 168 F.3d 72, 78-79 (2d Cir. 1999); *see also* 20 C.F.R. § 404.1527(d)(2) (assigning "controlling weight" to "well-supported" opinions reached by "medically acceptable clinical and laboratory diagnostic techniques" that are "not inconsistent" with other substantial evidence of impairments). "Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health." *Richardson v. Astrue*, No. 09-CV-1841, 2009 WL 4793994, at *7 (S.D.N.Y. Dec. 14, 2009) (internal citations and marks omitted).

The only "opinion of a treating physician" before the ALJ was that of Dr.

Diaz. *See* AR at 164-65 (diagnosing "major depressive disorder," with a "fair" prognosis).

The ALJ noted Dr. Diaz's findings, but did not regard her opinion as controlling since she

had "no expertise in psychiatry." AR at 19.

The ALJ was entitled to conclude that Dr. Diaz's opinion was not controlling.

Although she was Canales's treating physician, she was not a psychiatrist nor a

psychologist, nor did she have any special training in those areas. Without training in the

"medically acceptable clinical and laboratory diagnostic techniques" of the disciplines of

psychiatry or psychology, Diaz could not render a diagnostic opinion entitled to be treated

as "controlling." *See* 20 C.F.R. § 416.927(d)(2); *see also Terminello v. Astrue*, No. 05-CV-9491,

2009 WL 2365235, at *6-*7 (S.D.N.Y. July 31, 2009) (affirming ALJ's refusal to give

controlling weight to treating physician's opinion that claimant had "no useful ability to

work" because of "stress and depression" where treating physician was not a psychiatrist

and claimant had "not seen a psychiatrist for depression"); *Armstrong v. Comm'r of Soc. Sec.*,

No. 05-CV-1285, 2008 WL 2224943, at *11, *13 (N.D.N.Y. May 27, 2008) (affirming ALJ's

refusal to give controlling weight to treating physician's opinion that claimant "had

anxiety/depression" where treating physician was not a psychiatrist and had "never

treated [claimant] for any of the symptoms" reported to be due to anxiety or depression).

Even where the opinion of a treating physician is not given controlling

weight, the ALJ "must consider various factors to determine how much weight to give the

opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004). These factors include: (1) the

length, nature and extent of the treatment relationship; (2) the evidence in support of the

treating physician's opinion; (3) consistency of the opinion with the entirety of the record; (4) whether the treating physician is a specialist; and (5) other factors that are brought to the attention of the Commissioner that tend to support or contradict the opinion. *See* 20 C.F.R. § 404.1527(d) (outlining analytical factors).

As a practical reality, the ALJ concluded that Dr. Diaz's findings and opinions were not entitled to any weight. *See* AR at 25 (dismissing Dr. Diaz's findings as unworthy of "significant weight"). Since the Court concludes that remand is warranted for consideration of Dr. Ewaskio's opinion, it is premature to opine as to whether the ALJ's decision to assign no weight to Dr. Diaz's findings was proper. For example, if the Commissioner concludes that Dr. Ewaskio's opinion is entitled to controlling or significant weight on remand, that would lend substantial credence to Dr. Diaz's opinions, despite the fact that Dr. Diaz is not a psychiatrist.

Nonetheless, the Court notes that the ALJ's opinion did not explain how Dr. Diaz's findings and opinions were "conclusory" or "unsupported," nor did the ALJ explain how the treatment notes are "inconsistent," beyond noting episodes of Canales's intoxication.[6] The ALJ also did not explain why she concluded that Dr. Diaz had not performed a "mental status examination." AR at 25. The Commissioner's regulations advise claimants that "medical reports should include clinical findings (such as the results

_____

[6] The Court takes the ALJ's reference "the treatment notes" to refer to the notes at AR 224-40. They are noticeably difficult to read and were not before the ALJ at the time of the hearing. *See* AR at 260 ("[ALJ]: I don't believe that there are any records from [Dr. Diaz] with regard to a mental impairment in the file . . . The form alone without the treatment notes is not sufficient, so in the future will you please be sure to have the treatment notes."); *id.* at 16 (noting receipt of Dr. Diaz's notes into the record, without objection).

of . . . mental status examinations)," but the regulations do not require that the findings be in any particular format. 20 C.F.R. § 404.1513(b)(2). In any event, Dr. Diaz's report of November 8, 2007, does appear, in sum and substance, to be a mental status examination. It registers findings such as sleep disturbance, agitation, difficulty concentrating, hallucinations, paranoia, deficiencies in concentration. *See* AR at 167; *see also Correale-Englehart v. Astrue,* ___ F. Supp. 2d ___, 2010 WL 446175, at *12 (S.D.N.Y. Feb. 8, 2010) (noting that claimant had submitted "mental status examination" reporting "mildly impaired attention, concentration, and recent and remote memory"); *Mieczkowski v. Astrue,* No. 07-CV-141, 2008 WL 899344, at *4 (E.D.N.Y. Mar. 31, 2008) (noting claimant's submission of "mental status examination" reporting that "her thought processes were normal, her affect was full range and appropriate . . . [she] was fully oriented, her attention and concentration were intact, her sensorium was clear, and her memory was normal").

In sum, the Court cannot divine the bases for the ALJ's conclusions that Dr. Diaz's opinions were "conclusory," "inconsistent," or "unsupported," or for the conclusion that Dr. Diaz had not submitted a mental status examination. The Commissioner should develop the record on this issue on remand in order to permit a more fulsome evaluation of Dr. Diaz's opinion, of Canales's episodes of alcohol use, and of the effect of his alcohol use on his mental impairments, if any. *See, e.g., Glover v. Barnhart,* No. 06-CV-195, 2009 WL 35290, at *13 (N.D.N.Y. Jan. 5, 2009) (reversing and remanding where ALJ gave "short shrift" to evaluation of treating psychiatrist where "it appear[ed] that in coming to her conclusions the ALJ may have wrongfully chosen to rely upon medical evidence favorable

to her decision, based on her apparent perception that . . . alcohol dependency [is] at the root of [claimant's] mental limitations").[7]

## C.    Rodriguez's Findings

The ALJ dismissed Rodriguez's findings in their entirety because Rodriguez was a social worker, not a psychiatrist. In reaching that conclusion, the ALJ did not comply with — or consider — the requirements of Social Security Ruling 06-03p. That directive provides, in relevant part:

> In addition to evidence from "acceptable medical sources," we may use evidence from "other sources" . . . to show the severity of the individual's impairment(s) and how it affects the individual's ability to function. These sources include, but are not limited to . . . licensed clinical social workers[.]
>
> *    *    *
>
> [M]edical sources . . . such as . . . licensed clinical social workers [] have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources . . . are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

---

[7] Alcoholism cannot form the basis of a determination that a claimant is disabled. *See* 42 U.S.C. § 423(d)(2)(C) ("[a]n individual shall not be considered to be disabled . . . if alcoholism or drug addiction would be a contributing factor material to the Commissioner's determination that the individual is disabled"); *see also* 20 C.F.R. § 404.1535(b)(2) ("[W]e will evaluate which of your current physical and mental limitations . . . would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling."). Where there is evidence of alcohol abuse in the record, a claimant "should be provided with an opportunity to demonstrate that he would have been disabled if he had stopped using alcohol." *Downs v. Apfel*, 9 F. Supp. 2d 230, 234-35 (W.D.N.Y. 1998).

SSR 06-03p, 2006 WL 2329939, at *2, *3 (Soc. Sec. Admin. Aug. 9, 2006).[8] SSR 06-03p further

directs ALJs to use the same factors for the evaluation of the opinions of "acceptable

medical sources" to evaluate the opinions of "medical sources who are not 'acceptable

medical sources,'" such as licensed social workers. *Id.* at *4; *see also* 20 C.F.R. § 404.1527(d)

(Commissioner's regulations on the weighing of the medical opinions of treating sources).

While the ALJ was free to conclude that the opinion of a licensed social

worker was not entitled to any weight, the ALJ had to explain that decision. The ALJ

disregarded Rodriguez's opinion simply because it was the opinion of a social worker, not

on account of its content or whether it conformed with the other evidence in the record.

AR at 23; *compare, e.g., Gillies v. Astrue*, No. 07-CV-517, 2009 WL 1161500, at *6 (W.D.N.Y.

Apr. 29, 2009) (vacating and remanding solely for calculation of benefits where ALJ rejected

opinion of nurse practitioner solely because "nurse practitioners are not necessarily

considered to be acceptable sources of medical evidence" (internal marks omitted)), *with*

*Figueroa v. Astrue*, No. 04-CV-7805, 2009 WL 35290, at *12 (S.D.N.Y. Dec. 3, 2009)

(concluding SSR 06-03p satisfied where ALJ explicitly considered report from treating non-

physician and rejected it as "contradicted by the opinion of the consultative physician, who

is an acceptable medical source [and] by the claimant's conservative course of treatment,

by the objective medical findings of record, and by the claimant's wide range of daily

activities").

---

[8] SSR 06-03p was made effective upon its simultaneous publication in the Federal Register. 71 Fed. Reg. 45,593 (Aug. 9, 2006).

On remand, the Commissioner should address what weight, if any, is to be given to Rodriguez's opinions, and provide an explanation of that decision that complies with the requirements of SSR 06-03p.

## III

The case is remanded to the Commissioner for a new hearing consistent with this opinion.[9]

**SO ORDERED.**

s/Frederic Block

FREDERIC BLOCK
Senior United States District Judge

Brooklyn, New York
March 26, 2010

---

[9] Canales requests a remand solely for the calculation of benefits; that remedy is not yet warranted because "[w]here there are gaps in the administrative record or the ALJ has applied an improper legal standard," the proper course is to remand "for further development of the evidence." *Rosa v. Callahan*, 168 F.3d 72, 82-83 (2d Cir. 1999).